IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PSN ILLINOIS, LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ABCAM, INC., ABGENT, INC., )<br>AFFINITY BIOREAGENTS, INC. )<br>DISCOVERX CORPORATION, )<br>EXALPHA BIOLOGICALS, INC., )<br>GENETEX, INC. LIFESPAN )<br>BIOSCIENCES, INC. MULTISPAN, INC. )<br>and NOVUS BIOLOGICALS, INC., )<br>)<br>Defendants. )<br>)<br>) | No. 07 C 7190<br><br>Judge Hibbler<br><br>Magistrate Judge Valdez |

## MERCK'S OPPOSITION TO PSN'S MOTION TO COMPEL

In accordance with the briefing schedule set by the Court on May 8, 2008, nonparty Merck & Co., Inc. ("Merck") hereby submits its opposition to PSN's Motion to Compel ("PSN Motion").

As noted at the May 8, 2008 hearing on the PSN Motion, there are two categories of information sought here by PSN. The first category concerns information that presumably is in the possession of defendant LifeSpan Biosciences, Inc. ("LifeSpan"). That information includes contracts, communications, and payments between Merck and LifeSpan ("Category 1 Information"). It is incumbent on PSN to collect this information from LifeSpan—a party in this case—before burdening nonparty Merck with its discovery demands.

The second category of information sought here by PSN concerns Merck's confidential research and development work, which would not be in the possession, custody or control of

LifeSpan ("Category 2 Information"). The *sole* basis cited by PSN as its need for this information is to establish "commercial success" of S1P2 technology. (*See* PSN Motion at 5). However, the discovery it seeks from Merck is in no way limited to research that resulted in commercial success. Certainly, PSN does not need to delve into Merck's confidential research information if none of that research led to commercial success. Rather, PSN is plainly embarking on a fishing expedition with its unqualified, and overly-broad discovery demands.

As this Court noted at the May 8 hearing, "how much commercialization there has been … is a primary question." (May 8, 2008 Hr'g Tr. at 9 (attached hereto as Ex. 2)). On that score, as established by the attached declaration of Suzanne M. Mandala ("Mandala Declaration," attached hereto as Ex. 1), the fundamental fact is that Merck has *not* commercialized any product developed through the use of S1P2 technology.[1] And LifeSpan had no good faith basis to suggest otherwise. Thus, there is no predicate whatsoever for PSN's demand for Category 2 Information.

Further, PSN's Motion to Compel also should be denied because PSN has failed to establish that the probative value of the information sought outweighs the obvious burden on Merck to respond to the discovery requests.

**I.     PSN SHOULD COLLECT CATEGORY 1 INFORMATION FROM LIFESPAN.**

To the extent PSN seeks Category 1 Information, namely, information related to dealings between LifeSpan and Merck, PSN should first seek discovery from LifeSpan, a party in this case. Under Rule 26(b)(2)(C)(i), Fed.R.Civ.P., the Court "must limit the … extent of discovery otherwise allowed … if it determines that … the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive." Particularly where, as

---

[1] For the record, Merck also disputes that it has infringed any patent owned by PSN.

here, discovery being sought is presumably available from a party (*i.e.*, LifeSpan), a nonparty like Merck should not be burdened with discovery requests for such information (much less burdened with a motion to compel filed on the second business day after discovery in this case commenced). *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977 (Fed.Cir. 1993) (affirming Northern District of Illinois decision denying motion of compel production of documents from non-party where proponent of discovery failed first to seek documents from opposing party). If, for some reason, LifeSpan has misplaced or destroyed documents relating to its interaction with Merck, then Merck will conduct a reasonable search for such documents to the extent such documents are relevant to the claims or defenses in this case. However, it is premature to burden Merck with such requests at this time.[2]

II. **CATEGORY 2 INFORMATION (*I.E.*, MERCK'S CONFIDENTIAL RESEARCH INFORMATION) IS NOT DISCOVERABLE AT ALL IN THIS CASE.**

PSN seeks a broad range of discovery that would impermissibly require a highly burdensome search through lab notebooks and other materials to produce highly confidential documents that reference S1P2 technology. (*See, e.g.*, PSN Motion, at Ex. B, Specific Request No. 1 ("All representative documents in your possession related to 'S1P2 Technology.'")). PSN similarly demands that Merck prepare a Rule 30(b)(6) witness to testify on any and all such documents, as well as the status of research and development "activities conducted by Merck … concerning any materials or drugs using or derived from 'S1P2 Technology.'" (*See, e.g.*, *id.* at Ex. D, Deposition Topic Nos. 1 & 2). Yet, the **only stated purpose** for PSN's overtly intrusive

---

[2] Merck notes that PSN began serving Merck with discovery requests on March 12, 2008, well before the May 1, 2008 commencement of discovery in this case. (*See* PSN Motion, Ex. B). The initial discovery sought by PSN required Merck's production of documents by March 28, 2008. Merck requested an extension of time until April 11, 2008 in which to respond to PSN's requests, and PSN granted that request. (*See id.* at Ex. C, Apr. 11, 2008 letter from J. Hill to M. Mazza). Thus, PSN's suggestion on page 3 of its Motion that Merck somehow let discovery response deadlines pass is completely unfounded.

3

inquiries, according to the PSN Motion, is to probe the issue of "commercial success" as that issue supposedly relates to the reasonable royalty analysis under the *Georgia-Pacific* factors and rebuttal of obviousness invalidity allegations. (*Id.* at 5).

The undue breadth of PSN's requests exposes PSN's motive as that of fishing for information. But even if PSN's requests were narrowly tailored to probe the issue of commercial success, the issue of commercial success still would not warrant the discovery demanded from Merck in this case because: (A) Merck has not commercialized any product developed through the use of S1P2 technology (and PSN has no good faith basis to contend otherwise); and (B) PSN has not established that the probative value of the information being sought outweighs the burden for Merck to respond to its discovery requests.

### A.     Merck Has Not Commercialized Any Product Using S1P2 Technology.

No Category 2 Information is discoverable from Merck because Merck has not achieved any commercial success using S1P2 technology. In the patent context, "commercial success" requires "factual evidence that demonstrates the nexus between the *sales* and the claimed invention…." *In re Huang*, 100 F.3d 135, 140 (Fed.Cir. 1996) (emphasis added). In other words, evidence of sales is a necessary, but not a sufficient, condition to establish "commercial success." *See In re Baxter Travenol Labs*., 952, F.2d 388, 392 (Fed.Cir. 1991) ("information solely on the number of units sold is insufficient to establish commercial success"). In this case, there are no relevant Merck sales at all. Indeed, the Mandala Declaration confirms that "Merck has commercialized no products developed through the use of S1P2 receptors." (Mandala Decl. at ¶5).

And none of the "evidence" cited by PSN suggests otherwise. In particular, PSN has pointed—not to evidence of any sales—but rather, only to publications that reflect Merck's

4

research and development activities.[3]  However, these materials merely reflect research, not commercialization.  Because Merck has not commercialized any product developed through the use of S1P2 technology, PSN's motion to compel production of Category 2 Information must be denied.  *See, e.g.*, *Builders Assoc. of Greater Chicago v. City of Chicago*, No. 96-C-1122, 2001 WL 664453, at *8 (N.D.Ill. June 12, 2001) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then ***any burden whatsoever*** imposed upon … [the subpoenaed entity] would be by definition 'undue.'") (attached hereto as Ex. 3).

      Moreover, granting PSN's Motion would also set a dangerous precedent by allowing the issue of commercial success to serve as the basis for untethered discovery of virtually any entity that has published researched papers in the technology field of a patent-in-suit.  The Federal Circuit has cautioned about the potential for discovery abuse in similar situations:

> Micro Motion asserted entitlement to discovery of information concerning each competitor's business simply because it may seek to prove lost profits damages.  If this position were correct, a patentee could, in virtually every infringement suit, immediately obtain discovery from all possible competitors merely by filing a complaint asking for damages against one….  While we do not suggest that discovery is being used in this case simply to harass a competitor, ***the possibility for such abuse of discovery is readily apparent***.

*Micro Motion, Inc. v. Kane Steel Co, Inc.*, 894 F.2d 1318, 1324-25 (Fed.Cir. 1990) (emphasis added).  Indeed, if the mere issue of "commercial success" were a hook sufficient to justify

---

[3] At the May 8, 2008 hearing, counsel for PSN also made reference to "an FTY 720 drug in phase III clinical trials that ***may or may not be commercialized*** by Merck…." (Ex. 2, May 8, 2008 Hr'g Tr. at 7 (emphasis added)).  By PSN's own admission, such clinical work is not itself actual commercialization and, if true, raises only a potential issue as to possible commercialization in the future.  Indeed, that clinical trials might be conducted for a given product demonstrates that the product is not yet ready for commercial sale as of the time of such trials.  In any case, counsel for Merck has investigated the allegation of clinical trials for FTY 720 and have confirmed that no such clinical work has been conducted by Merck, or at the direction of Merck.

discovery of nonparties simply because they research in the technology area of a patent-in-suit, discovery on nonparties would be virtually limitless. Merck respectfully submits that the real reason PSN has propounded discovery on Merck is not to probe commercial success, but rather, to fish for information.

      **B.    PSN Has Not Established That The Probative Value Of Category 2 Information Outweighs Nonparty Merck's Burden Of Production.**

A party seeking to compel discovery bears the burden of showing that the information being sought is discoverable. *Alexander v. F.B.I.*, 186 F.R.D. 200, 203 (D.D.C. 1999). That entails a showing that the probative value of the information sought outweighs burden on the party from whom discovery is sought. *See, e.g.*, *Patterson v. Burge*, No. 03-C-4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) (attached as Ex. 4). Thus, PSN cannot simply argue relevance, as it has, without any regard to weighing the probative value against the burden to Merck.

*First*, the commercial success information sought by PSN has little, if any, probative value. To begin with, any supposed commercial success by Merck cannot be relevant to the reasonable royalty LifeSpan would pay as patent infringement damages. The only compensation LifeSpan received from Merck was a flat fee for access to LifeSpan's database. (*See* PSN Motion at 2). There is no evidence, or even an allegation by PSN, that those subscription fees in any way depend on what subscribers might choose to do with the information retrieved from LifeSpan's database. In short, LifeSpan derives no additional benefit whatsoever from Merck's downstream use of that information.

Moreover, the focus of the reasonable royalty analysis, as made clear by the very case cited by PSN in its brief, is the anticipated profits of the alleged infringer (in this case, LifeSpan), not the actual profits of any other party. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,

750 F.2d 1552, 1568 (Fed.Cir. 1984) (defining "[a] reasonable royalty [as] the amount that 'a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, *at a reasonable profit*.") (emphasis added); *cf. Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed.Cir. 2001) (holding "the fact that [the infringer] did not subsequently meet [its sales] projections is irrelevant to [its] state of mind at the time of the hypothetical negotiation."). Accordingly, any commercial success or profitability on Merck's part would not be of any probative value to determining the reasonable royalty LifeSpan would pay PSN for its own use of S1P2 technology.

**Second**, to the extent commercial success might otherwise be relevant to the issues in this case,[4] mere relevance of information alone does not mean that the information is discoverable. *See* Fed.R.Civ.P. 26(b)(2)(C) (setting forth limits on otherwise discoverable information). "***Even if relevant***, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Micro Motion*, 894 F.2d at 1323. Moreover, the fact that Merck is a nonparty is a consideration that weighs against requiring discovery from Merck. *See Patterson*, 2005 WL 43240, at *1. PSN has made no attempt at all to address the balance required for discovery. In short, nonparty discovery in such a case cannot be compelled solely on the basis of purported relevance.

Nor has PSN even cited a case suggesting that commercial success discovery from a nonparty is permissible. The decisions cited by PSN on page 5 of its Motion, namely, *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082 (Fed.Cir. 1985) and *Demaco Corp. v. F. Von*

---

[4] PSN has not cited any allegation of obviousness for which commercial success evidence would supposedly be used to rebut.

*Langsdorff Licensing, Ltd.*, 851 F.2d 1387 (Fed.Cir. 1988), do not at all relate to commercial success by nonparties, and certainly do not speak to the discovery of such information from nonparties. In *Panduit*, the Federal Circuit reversed a finding of invalidity in part because of the commercial success by the patentee and defendant, but made no mention of any nonparty involvement. 774 F.2d at 1085, 1099-1100. In *Demaco*, the Federal Circuit merely held that the lower court erred in refusing to consider the commercial success of the patented product, but, like *Panduit*, no mention of any nonparty commercial success was made. 851 F.2d at 1391-94. At bottom, PSN has no authority that would permit discovery of commercial success information from a nonparty such as Merck. *See Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178-79 (N.D.Ill. 2006) ("Murata … was unable to cite a single case in which the customers of an alleged infringer provided discovery, or where the alleged infringer—as opposed to the patent owner—was required to turn over the names of its customers to assist the patent owner in proving commercial success.").

## CONCLUSION

　　Merck's highly confidential research and development activities did not result in the commercialization of any products developed through the use of S1P2 technology. As such, Merck's confidential research and development work simply has no relevance to any issue in this case, and plainly falls outside the scope of discovery permitted under Rule 26(b)(1), Fed.R.Civ.P. To the extent Merck may have records related to its dealings with LifeSpan, LifeSpan—a party in this case—also should have the same records. It is necessary for PSN to seek such information from LifeSpan before any burden on Merck may be justified. Therefore, for the foregoing reasons, PSN's Motion to Compel should be denied in its entirety.

Dated: May 15, 2008　　　　　　　　　　　　　Respectfully submitted,

By:    s/ Jonathan Hill
　　Raymond N. Nimrod
　　Jonathan Hill
　　JENNER & BLOCK LLP
　　330 N. Wabash Avenue
　　Chicago, IL  60611
　　Telephone: 312 222-9350
　　Facsimile: 312 527-0484

　　Gregory D. Bonifield
　　JENNER & BLOCK LLP
　　919 Third Avenue
　　New York, NY  10022
　　Telephone: 212 891-1600
　　Facsimile: 212 891-1699

　　Attorneys for MERCK & CO., INC.

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2008, a true and correct copy of the foregoing **MERCK'S OPPOSITION TO PSN'S MOTION TO COMPEL** was caused to be served via the Court's electronic filing system upon the following counsel:

Michael P. Mazza
MICHAEL P. MAZZA, LLC
686 Crescent Blvd.,
Glen Ellyn, IL  60139

**Counsel for PSN Illinois, LLC**

Timothy M. McCarthy
TREXLER, BUSHNELL, GIANGIORGI,
 BLACKSTONE & MARR, LTD.
105 W. Adams, 36th Floor
Chicago, IL  60603

**Counsel for LifeSpan Biosciences, Inc.**

  s/ Jonathan Hill
One of the Attorneys for
MERCK & CO., INC.